## CHARLES WEBER *vs.* FREDERICK FICKEY, JR.

*Action against a Stockholder under sec. 52, of Art. 26 of the Code—Construction of sec. 5 of the Act of 1868, ch. 471—Effect of failure to comply with the requirements of said said section—When a case is ready for Trial when sent back under the eighth Rule of the Court of Appeals—Construction of fourteenth Rule of the Superior Court of Baltimore City relating to Bills of Particulars—Variance—"Junior" no part of a person's name—Admissibility of Parol proof of the Organization of a Corporation, and of the issue of Stock—Sufficiency of Evidence—Sec. 57 of the Act of 1868, ch. 471, Directory merely—Sufficiency of averment in Narr. as to the payment for Stock—Defective prayer—Statement of a Witness not Conclusive as against his own Evidence—Estoppel—Certain proof held to be unnecessary in an Action against a Stockholder under the Personal Liability clause.*

W., a stockholder in a private corporation was sued by F., also a stockholder, for the recovery under sec. 52, of Art. 26 of the Code, of the amount of a judgment which F. had recovered against the corporation. The defendant pleaded as a bar to the action, that F. as president of the corporation, did not keep a full, fair, and correct account of the transactions of the corporation as required by sec. 5 of the Act of 1868, ch. 471. That section requires that the *President* and *directors* shall keep "full, fair and correct accounts of their transactions," and shall annually prepare "a full and true statement of the affairs of the corporation, which shall be certified to by the president and secretary, and submitted at the annual meeting of the stockholders." On demurrer, it was HELD:

1st. That even if the failure to comply with the provisions of said fifth section was owing entirely to the conduct of the President of the corporation, it could not have the effect of releasing either the corporation or its stockholders from the liabilities which the law had imposed upon them for the debts which it had contracted.

2nd. That the facts stated in the plea may have been true, and yet they did not constitute a bar to the plaintiff's recovery.

Weber *vs.* Fickey.

Under the eighth-Rule of the Court of Appeals, the case was sent back to the Superior Court of Baltimore City, was placed upon the trial docket of that Court, was on the 10th day of September, marked for trial at the regular call of the docket, and was reached on the 30th day of November following, and was then called for trial. The Court below then required the trial to be proceeded with. On appeal by the defendant it was HELD:

That this was ample notice to the defendant, and the Court below was right in requiring the trial to be procceded with.

A demand for a bill of particulars was made in the Superior Court after the trial had begun, and after a former demand had been complied with, which compliance the Superior Court decided, was a satisfaction of the demand. By the fourteenth rule of that Court, it is provided that "if the declaration shall not disclose the particulars of the plaintiff's demand, the defendant at any time before the cause shall have been entered on the trial docket, or afterwards with leave of Court, may enter on the docket a demand of particulars of the claim or demand," &c. HELD:

That even if no former demand had been made and satisfied, the demand came too late under the rule of Court.

The judgment sued upon was recovered by F., Junior, while the amended *narr.* in this case named the plaintiff as F. It was nowhere alleged or proved that there were two persons bearing the name of F. so as to make the addition of "Junior" necessary to distinguish the one from the other. On objection it was HELD:

That there was no such variance as to make the record of the judgment inadmissible in evidence.

It appearing that either no written evidence of the organization of the corporation ever existed, or that if it did, the writing had been lost, it was HELD:

1st. That in this state of the case, parol evidence of the organization was clearly admissible.

2nd. That entries in the stock book, and parol evidence offered in connection therewith, were admissible for the purpose of proving that the plaintiff was the owner of shares of stock fully paid up at the time he became a creditor of the corporation, and that the defendant at that time was the owner of stock which had not been fully paid for.

The record in an equity proceeding was offered to show that D. & Son as mortgagees, had sold certain marble quarries to H., and that the corporation had been substituted as purchaser in the place of H. Receipts were offered of payments by the corporation to D. & Son, on account of the mortgage, and it was proven that 440 shares of the paid up stock of the corporation was issued to H. as the consideration of his agreeing that the corporation should be substituted as purchaser of the mortgaged premises. On exception to a prayer on the ground that there was no evidence tending to prove that there was any agreement that the corporation would accept from H. his interest in the quarries and pay all encumbrances thereon held by D. & Son, it was HELD:

That the above evidence tended to prove that there was such an agreement.

On objection that the plaintiff was not entitled to recover because the President and directors of the corporation had not kept books, "so as to show at all times fully what property was received for said stock, at what value, and the number of shares of the capital stock issued for the same," as required by the 57th section of the Act of 1868, ch. 471, it was HELD:

That this provision of said section is directory merely, and not essential to the validity of a subscription to the capital stock payable in property.

It was further HELD:

1st. That as the *narr.* alleged that the shares of the plaintiff had been fully paid for, it was not necessary to allege *in what manner* they had been paid for, but the mode of payment was properly to be shown by the proof.

2nd. That a prayer was bad because it assumed that a statement made by a party, was conclusive even as against his own positive evidence.

3rd. That after issuing the 440 shares of stock to H., and becoming liable to pay the purchase money for the quarry property as substituted purchaser, and receiving the property from H. neither the corporation nor a stockholder could be permitted to escape responsibility by showing that more was paid for the property than it was actually worth.

4th. That it was not necessary in this action for the plaintiff to show what were the interests purchased by the corporation in the quarry property.

Weber *vs.* Fickey.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*First Exception.*—Stated in the opinion of the Court.

*Second Exception.*—Stated in the Court's opinion, except that the rule of the Superior Court on which the decision of this exception is based, is not there stated. Said rule is as follows:

14. "If the declaration shall not disclose the particulars of the plaintiff's demand, the defendant at any time before the cause shall have been entered on the trial docket, or afterwards with leave of Court, may enter on the docket a demand of particulars of the claim or demand; and if such demand be made before plea pleaded, the rule to plead shall be enlarged to fifteen days after filing of the bill of particulars and service of a copy thereof on the defendant."

*Third, fourth, fifth, sixth, seventh and eighth exceptions,* sufficiently stated in the opinion of the Court.

*Ninth Exception.*—At the trial the plaintiff offered the following prayers:

1. If the jury shall find from the evidence in the case, that the Baltimore County Marble Company was incorporated under the General Laws of the State, as offered in evidence, on or about the 11th day of November, 1870, and that a few days thereafter, a general meeting of the incorporators and stockholders was called and assembled, for the purpose of organizing said corporation, and considering the propriety of receiving the subscription of a certain Charles T. Holloway to the stock of said corporation, in property suitable and necessary to the business and objects of said corporation, and that said corporators and stockholders then and there organized said company, and agreed with said Holloway to accept from him all his interest in certain stone quarries, mines and property owned by him, and situated in Baltimore County; said corporation to pay all encumbrances thereon, held by a

certain Denmead and Son, and in addition thereto, to transfer to said Holloway, 440 shares of full paid up stock of said Baltimore County Marble County ; and they shall further find that the said 440 shares of stock were issued and delivered to said Holloway or to Anne H. Holloway, his wife, with his consent and approbation, and that the said corporation under said agreement took immediate possession of said mines, quarries and property, and continued to use and occupy the same in mining and quarrying stone, and in carrying on the business of said corporation for over a period of one year, and during the entire period of the active existence of said corporation, then the holder of the said 440 shares of the capital stock of said corporation, or any part thereof, was not and is not liable for any of the debts, contracts or obligations of said corporation as an unpaid up stockholder.

2. If the jury shall find the facts set out in the aforegoing prayer, and shall further find that ten shares of said stock were, on or about the 30th of January, 1871, transferred and issued to Frederick Fickey, Jr., the plaintiff in this case, and is the only stock held by said Fickey in said company, then the said Fickey was and is in no way responsible thereby to any of the creditors of said corporation, for any of the debts or contracts of said corporation created during the time he was such holder.

3. If the jury shall find the facts set out in the two preceding prayers, and shall further find that the Baltimore County Marble Company became and is indebted to the plaintiff in the amount sued for in this case, or in such part thereof as they may find, and at the time of the creation of the said indebtedness, the defendant was a stockholder in said corporation of fifty shares of stock, upon which the whole par value has not been paid, then the said defendant is liable to the plaintiff to the amount of such unpaid subscription, less whatever sum the jury may find has been paid by Weber in the suit of *Hurtt vs. Weber,*

in the Circuit Court for Howard County; provided the amount so found to be due on account of defendant's unpaid subscription shall not exceed the sum which the jury may find is due from the said company to the plaintiff.

4. If the jury shall find that some time in the month of October or November, 1871, certain stock of the Baltimore County Marble Company was transferred by Fickey to Green, and shall further find that the same was held by Fickey (all except ten shares) as collateral security for money loaned by him to a certain John Robinson, then the said Fickey was under no liability to the creditors of said corporation at any time during the holding of said stock, growing out of the fact that the full par value of the same had not been paid up.

The defendant objected to the granting of the plaintiff's first prayer, because there was "no evidence that said company agreed with said Holloway to accept from him all his interest in certain stone quarries, mines and property owned by him, and situated in Baltimore County, said corporation to pay all encumbrances thereon held by Denmead & Son;" and because "it submitted to the jury the question of law, if the company be duly incorporated."

The defendant offered the following prayers:

1. That the transcript of the record of the judgment offered in evidence is variant from the judgment averred in the declaration in this, that the judgment offered in evidence purports to be in favor of one Frederick Fickey, Jr., whereas the judgment averred in the declaration purports to be in favor of Frederick Fickey, and therefore the plaintiff cannot recover.

2. That the plea of *nul tiel record* must be found by the Court in favor of the defendant, because of the variance mentioned in the first prayer.

3. That the plaintiff, to maintain his action at law, must show himself exempt from suit by creditors of the corporation, and that the evidence offered in this cause tending

to show that he was the holder of stock paid by land and other property, is not legally sufficient in an action by a creditor, to exempt the plaintiff from liability for the debts of the corporation at the suit of a creditor of the corporation.

4. That to entitle the plaintiff to recover in this form of action, the burden rests upon him to show that the stock is fully paid up, and there is no averment in the declaration to support the proof offered tending to show that the plaintiff held the stock as assignee of Holloway, and that said stock was fully paid up by land or other property, and unless the jury find from all the evidence that Fickey paid up his stock, their verdict must be in favor of the defendant.

5. That the jury are not at liberty to consider the evidence, tending to prove that Holloway purchased by a written agreement the right to quarry marble for several years, by a payment of royalty upon a certain farm in Baltimore County; that subsequently one Denmead took a mortgage of said right to quarry marble, and to secure the value of certain improvements made by himself, of about $8000, from said Holloway & Denison; that said mortgage was foreclosed in default of payment, that said Holloway became the purchaser at the mortgage sale, that subsequently the Baltimore County Marble Company of Baltimore County became substituted as purchaser instead and place of said Holloway; that the company then executed a mortgage to pay the balance of the purchase money, and although the jury may find that at a certain meeting of the managers and directors of the company, it was agreed that 440 shares should be given to the said Holloway as paid up stock; that this is not evidence sufficient to authorize them to find that the said 440 shares alleged to have been given to Holloway, was paid up stock; that the said alleged agreement between the said directors and managers, and the said Holloway, to give

unto said Holloway $44,000 in capital stock, was void as against creditors, without authority of law, and no legal proof of compliance with the provisions of the statute, requiring stock to be fully paid up, so as to exempt the holder of such stock from personal liability; and if they further find that the 10 shares alleged to have been issued to the plaintiff, were a portion of said 440 shares of said Holloway's stock, and that the plaintiff has made no other payment upon said 10 shares, then there is no sufficient proof that the plaintiff has fully paid up his stock, and their verdict must be in favor of the defendant.

7. If the jury shall believe the testimony of the witness Green, that the plaintiff sold him 140 shares of stock; and if they also find, that but 100 of said shares was hypothecated to said Fickey by Robinson, then in the absence of any evidence tending to show that the remaining 40 shares had not been paid for in full, their verdict must be in favor of the defendant.

8. That the Court exclude from the consideration of the jury the following testimony of Fickey, admitted subject to exception: "Mr. Holloway proposed to assign his claim on the property, in consideration of the issue of 440 shares of paid up stock; a meeting was held to consider this proposition, it was accepted; Holloway was to assign to the company all his interest in the quarries and other property in Baltimore County;" the stock of Holloway was full paid up stock.

9. That the interest purporting to be conveyed by the mortgage, which was foreclosed, was a leasehold interest and not land, as required by the organic Act, and the other interest merely chattels; that such an interest could not gratify the requirements of the statute permitting land and other property to be taken in payment of stock.

10. That if the jury find from the evidence, that the plaintiff stated to the defendant, that he was the subscriber of 100 shares of the capital stock of the company,

and if the jury find that there was no payment of said stock, then their verdict must be in favor of the defendant.

11½. (To the Court.) That the alleged agreement to be substituted as purchaser, in consideration of the payment of the purchase money of $10,000, or thereabouts, and the issual of stock to the extent of 440 shares, when the actual value of the interests sold by public auction is shown to have been but $10,000, could not by any agreement or arrangement between stockholders, be taken to be worth the value of 440 shares of full paid stock, so as to constitute payment in full of stock under the personal liability section of the Act.

12. That there is no evidence legally sufficient to show that an agreement, bargain or contract was made with Holloway by the Company, to give 440 shares of stock, in consideration of the substitution of the company as purchaser of the property in question.

13. That if the jury shall find for the plaintiff, then they shall deduct from said sum the amounts, $580, $46.80 and $64.01.

14. That the Court exclude from the jury the record of Denmead & Son against Denison & Holloway, because the same is defective, irregular and incompetent evidence under the issues joined in this cause.

15. That there is no evidence tending to show what the leasehold interest sold under the record proceedings of Denmead & Son was, and that it is necessary to produce the lease thereof, in order to show that any interest in lands was thereby conveyed.

16. That the credibility of plaintiff's testimony is for the jury, and if they believe from all the evidence that the ten shares of stock issued to the plaintiff was original stock, and not assigned by Anne H. Holloway, and if they further find that the plaintiff has not paid for said stock, then their verdict must be in favor of the defendant.

17. That by the terms, "other property," the articles enumerated in the mortgage contained in the record of Denmead & Son against Holloway & Denison, are not embraced, and such articles cannot, under the statute, be regarded as payment in full of the capital stock, so as to exempt the stockholders from personal liability.

The Court (DOBBIN, J.,) granted the plaintiff's prayers, and refused those of the defendant, except the sixth and eleventh which were withdrawn, and the thirteenth which was conceded.

The defendant excepted, and the verdict and judgment being against him he appealed.

The cause was argued originally before BARTOL, C. J., STEWART, GRASON, MILLER and ALVEY, J. On the re-argument on notes, it was submitted to BARTOL, C. J., BRENT, GRASON, MILLER and ALVEY, J.

*John Henry Keene, Jr.,* for the appellant.

*Thomas M. Lanahan,* for the appellee.

GRASON, J., delivered the opinion of the Court.

This cause was argued and decided at April Term, 1878, and upon motion of the appellee was ordered to be re-argued on notes, and the case has been again carefully considered. The suit was instituted by the appellee, a stockholder and creditor of the Baltimore County Marble Company of Baltimore County, against the appellant, also a stockholder in the same company, for the recovery, under sec. 52 of Art. 26 of the Code, of the amount of a judgment, which the appellee had recovered against the corporation in the Circuit Court for Baltimore County. The declaration, as originally filed, contained two counts, the second of which was held insufficient on demurrer. An amended *narr.* containing a single count was then

filed, to which there was also a demurrer, which was overruled. The defendant then filed twenty-two pleas, to the fourteenth, fifteenth, twentieth and twenty-second of which the plaintiff demurred, and the demurrer was sustained. During the progress of the trial nine exceptions were taken by the defendant, the last of which was to the granting of the appellee's prayers, and to the rejection of all the prayers offered by the appellant, except the thirteenth which was conceded, and the sixth and eleventh which were withdrawn. We shall consider these exceptions in the order in which they were taken; and first the demurrer. This case was before this Court at the April Term, 1877, when the judgment was reversed because the declaration was defective in not alleging that the plaintiff had fully paid his subscription to ten shares of the capital stock of the corporation held by him, and further, because it did not charge that the defendant was a stockholder *at the time* the debt to the plaintiff was incurred by the corporation. The declaration in this case contains both allegations, and is in all other respects formal and sufficient, and the demurrer was, therefore, properly overruled. The counsel for the appellant admitted, at the argument of this cause, that the demurrer to his fourteenth, fifteenth and twenty-second pleas was well taken; but contended that his twentieth plea was good, and that the demurrer to it ought not to have been sustained.

The twentieth plea was pleaded as a bar to the action upon the ground as therein alleged, that the appellee as President of the Marble Company did not keep a full, fair and correct account of the transactions of the corporation as required by the fifth section of the Act, and because the appellee was President during the time the debt was contracted by the corporation. Section 5 of the Act of 1868, ch. 471, requires that the *President and directors* shall keep, "full, fair and correct accounts of their transac-

tions," and shall annually prepare "a full and true statement of the affairs of the corporation, which shall be certified to by the President and Secretary, and submitted at the annual meeting of the stockholders." Admitting for the sake of the argument, that the failure to comply with the provisions of the fifth section was owing entirely to the conduct of the President of the corporation, the appellee in this case, it could not have the effect of releasing either the corporation, or its stockholders from the liability which the law had imposed upon them, for the debts which it had contracted.

The facts stated in the plea may have been literally true, and yet they did not constitute a bar to the plaintiff's recovery. But the plea alleges that the *plaintiff* refused to keep an account and make the certificate, while the law imposes that duty, not on the plaintiff, but upon the *President and Directors*, and without the co-operation of the *directors*, the President of the corporation had no power or authority to perform either of the duties required by the fifth section.

We are of opinion that the demurrer to the twentieth plea, was, therefore, properly sustained.

The first exception was taken to the refusal of the Superior Court to postpone the trial of the cause, on the ground that thirty days notice had not been given before trial, as provided by sec. 16 of Art. 5 of the Code. That section relates to cases in which a writ of *procedendo* is awarded by the Court of Appeals. Under the eighth rule of that Court, passed under authority given by the Constitution *no procedendo* now goes, but when the judgment appealed from is reversed, a new trial is awarded, and the case is sent back and goes upon the trial docket of the Court below.

This case was sent back under said rule to the Superior Court of Baltimore City, was placed upon the trial docket of that Court, was on the 10th day of September marked

for trial at the regular call of the trial docket, and was reached on the 30th day of November following, and was then called for trial. This was ample notice to the defendant, and the Court below was right in requiring the trial to be proceeded with. We find no error in the ruling of the Court below in the second exception. The demand for a bill of particulars was made after a former demand had been complied with, which compliance the Court below decided was a satisfaction of the demand, and after the trial had begun. Even if no former demand had been made and satisfied, this demand came too late under the rules of that Court. The third exception was taken to the admission in evidence of the certificate of incorporation. This exception was abandoned at the argument, and we could not notice it further than to say, that the certificate is in conformity with the requirements of the law, and was clearly admissible as evidence.

The fourth exception was taken to the admission in evidence of the record of the judgment recovered by the appellee against the Marble Company. The only ground of objection urged against its admissibility is, that the record of the judgment shows that it was recovered by Frederick Fickey, Jr., while the amended *narr.* in this case names the plaintiff as Frederick Fickey. It was contended that this is such a variance as to make the record inadmissible. It is nowhere alleged or proved that there are two persons bearing the name of Frederick Fickey, so that the addition of " Jr." was necessary to distinguish the one from the other. It has been held in various cases, that " Jr." is no part of a man's name. We refer only to *Headley vs. Shaw,* 39 *Illinois Reps.,* 354; *State vs. Weare,* 38 *N. H.,* 314; *Cobb vs. Lucas,* 15 *Pick.,* 7. The record of the judgment was properly admitted. From what we have said with respect to this exception, it necessarily follows that the first and second prayers of the appellant were rightly refused. The

appellee then proved that the corporation was in existence on the 11th day of November, 1870, and that he was present and presided; that he kept no record of the proceedings, but supposed that Miller, the secretary did; had asked Miller for it, who could not find it; had inquired for it, and was told that it was lost. That all the incorporators and stockholders were at the meeting, which was called a few days afterwards, for the purpose of organization, and that Miller was there as secretary. Miller being then called by the Court, testified that he was not at that meeting, and was not then secretary; that afterwards he was secretary, but that no books ever came into his hands, but that the books were kept from him, and was sure they were kept by Fickey. That the books contain his, Miller's writing, but that he saw no books of the organization, and that he did not know of any record. Fickey then testified that he knew of no record of the organization, and did not know that one was kept. Proof was then offered by him that a meeting was called for the purpose of organization and considering Holloway's proposition, and that Holloway proposed to sell the property, that he, Fickey, was elected President, and was directed to issue 440 shares of full paid up stock, in consideration of Holloway's assigning all his interest in the quarry in Baltimore County, which was accordingly done. This proof was objected to as inadmissible, but the Court overruled the objection, and admitted the evidence, and this ruling forms the subject of the fifth exception. It appears that either no written evidence of organization ever existed, or that if it did, the writing had been lost and could not be found, and in this state of the case, the evidence objected to was clearly admissible, and the ruling of the Court below, on this exception, is affirmed. The appellee further proved that the subscribers to the stock signed no paper; that the stock book from which the certificates were issued, was

the only writing kept in relation to stock. The book from which the certificates were issued, was then handed to the witness, who read from it entries, showing that fifty shares of stock had been issued to the appellant; and then further testified that said book showed the number of certificates of shares issued, and to whom; that the appellant paid five hundred dollars on account of the shares issued to him, that the balance remained unpaid, and payment thereof had been frequently demanded. That witness could not say that the appellant was the owner of the stock at the time he was testifying, but that he was owner all the time the advances were made by the witness. That on January 30th, witness became the owner of ten shares of the stock, which had been issued to Holloway, and then read the entry in the stock book to show that he had thus become the owner of the ten shares of said stock. The appellant objected to the admission of all said evidence, beginning with the words, "he was owner," but the evidence was admitted and he took his sixth exception to this ruling. This evidence was most material to the appellee's recovery, which depended upon his proving that he was the owner of shares of stock fully paid up at the time he made the advances to the corporation, and also that the appellant at that time was the owner of stock which had not been fully paid for. We cannot perceive in what manner these facts could have been proved, except by the production of the stock book and the parol evidence offered in connection therewith, we can discover no objection to its admissibility. At the time Holloway offered his property in payment of subscription to stock, and the corporation agreed to take it, it appears from the record, that there was an equity suit pending in the Circuit Court for Baltimore County, in which Denmead and Davis, trading as Denmead & Son, mortgagees, had sold the quarry property in Baltimore County to Holloway, and that under the agreement

between the parties to the suit and the Marble Company, the latter was substituted as the purchaser in the place of Holloway. The record of said equity case was offered in evidence, for the purpose of showing a transfer of Holloway's interest in the quarry property to the Marble Company, certain receipts for payments made on account of the purchase were also offered in evidence, and were objected to by the appellant. The objections were overruled, and the record and receipts admitted, and these rulings form the subjects of the seventh and eighth exceptions respectively. We cannot discover any valid objection to the proofs offered in these exceptions, and the rulings of the Court below upon them are affirmed. At the close of the evidence, the appellee presented four prayers, which were granted, and the appellant seventeen, of which the thirteenth was conceded, the sixth and eleventh were withdrawn, and all the others were rejected, and to the granting of the appellee's prayers, and the refusal of those offered by the appellant, the latter took his ninth exception. The appellee's first prayer was specially excepted to, on the ground that there was no evidence tending to prove that there was any agreement that the Marble Company would accept from Holloway, all his interest in certain stone quarries in Baltimore County, and pay all encumbrances thereon held by Denmead & Son. The receipts of payment to Denmead & Son from the Marble Company, on account of the mortgage executed by Holloway and John M. Dennison were in evidence. This mortgage was the foundation of the equity proceedings, the record of which was offered in evidence, and that record proved that the Marble Company was substituted in place of Holloway as the purchaser of the premises thus mortgaged, and the receipts show that payments were made by the corporation on account of the mortgage, and the proof offered by the appellee, proved that 440 shares of paid up stock of the corporation was issued to Holloway, as the considera-

tion of his agreeing that the corporation should be substituted as purchaser of the mortgaged premises. All this proof was in the case and tended to prove that there was an agreement that the Marble Company would accept from Holloway. all his interest in certain stone quarries in Baltimore County, and pay all encumbrances thereon, held by Denmead & Son. There was, therefore, proof to sustain this prayer. But it was contended that the appellee was not entitled to recover, because the president and directors of the corporation had not kept books, "so as to show at all times fully what property was received for said stock, at what value and the number of shares of the capital stock issued for the same," as required by the 57th section of the Act of 1868. From a careful examination of sections 56 and 57 of the Act, we think it clear that this provision of the latter section is *directory* merely, and not essential to the validity of a subscription to the capital stock, payable in property. In such a case, the owner of the property conveys the property, and the corporation issues the stock to him, and the contract thus becomes an executed contract. The failure of the corporation to keep a book, showing the particulars of such a transaction cannot invalidate it. When the contract is executed by a transfer of the property and the issue of the stock, the corporation is estopped from setting up the invalidity of the contract. *Oil Creek and Allegany R. R. Co. vs. Penn. Transportation Co.,* 83 *Penna. Reps.,* 160; *East N. G. and Jamaica R. R. Co. vs. Lightall,* 5 *Abb. Pr. N. S.,* 458; *Smith vs. Sheely,* 12 *Wall.,* 358.

It may be further remarked that it appears that the appellant was one of the directors or managers of the corporation during the time these transactions took place, and is therefore as much in default in not having the books kept, as directed by the 57th section, as is the appellee. The appellee's four prayers put the law of the case correctly and fairly to the jury, and submitted to them all the

facts necessary to be found by them, to establish the appellee's right to recover, and they were properly granted. The appellant's first and second prayers have been disposed of by what we have said with respect to the fourth exception. His third prayer asks an instruction that the evidence offered to show that the appellee held stock paid for by land or other property, is not legally sufficient to exempt him from liability for the debts of the corporation at the suit of a creditor of the corporation. We have already stated that, if the stock held by the appellee was part of the same stock which had been issued to Holloway in consideration of his interest in the stone quarries which had been transferred to the corporation, then he was liable, as stockholder, to the creditors of the corporation. The appellant's third prayer is also in direct conflict with the appellee's prayers, which, we have stated, were properly granted. His fourth prayer relies upon the fact that there was no averment in the *narr.* to support the proof offered tending to show that the ten shares of stock held by the appellee had been paid for by land or other property. The *narr.* does allege that these ten shares had been fully paid for and it was not necessary to allege *in what manner* they had been paid for. The mode of payment was properly to be shown by the proof. This prayer was therefore properly rejected. The fifth prayer was also properly rejected because it seeks to exclude from the consideration of the jury evidence, which, in considering the exceptions to evidence, we have said was properly admissible. The sixth prayer having been withdrawn is omitted from the record, and is not therefore before us for consideration. The seventh prayer is based upon the evidence of Thomas M. Green, who testified that he had bought one hundred and forty shares of the stock of the Marble Company from the appellee, while the latter testified that he had sold but one hundred shares, but that all the shares which he did sell to Green had been held by him only as collateral

security for a debt due him by Robinson, and there was no evidence whatever offered tending to show that the shares so transferred to Green, were not so held. For this reason the seventh prayer was also rightly refused. The eighth prayer was properly rejected for the same reasons we have given to show that the evidence in the fifth exception was admissible. The ninth prayer was rightly refused because under the Act of 1868, chap. 471, sec. 56, subscriptions to stock may be paid *in land or other property*. The tenth prayer was also rightly rejected, because it assumes a statement made by a party is conclusive even as against his positive evidence. The prayer, numbered eleven and a half, states as a proposition of law that the agreement to be substituted as purchaser, in consideration of the payment of the purchase money of $10,000 or thereabouts, and the issual of stock to the extent of 440 shares could not by any agreement or arrangement of stockholders, be taken to be worth the value of 440 shares of full paid stock, so as to constitute payment in full under the personal liability clause of the Act, because the actual value of the interest sold at public auction is shown to have been but ten thousand dollars. To this it may be answered that Holloway had paid part of the purchase money at the time the corporation was substituted as purchaser, and also, that the stockholders may have supposed that Holloway's interests in the quarry property were worth much more than ten thousand dollars. But whether this be so or not, after issuing the stock and becoming liable to pay the purchase money and receiving the property from Holloway, neither the corporation nor a stockholder can be permitted to escape responsibility by showing that more has been paid for the property than it were actually worth. This prayer was therefore properly rejected. The twelfth prayer was rightly refused. There is not only evidence of an agreement to give Holloway 440 shares of stock for being substituted as purchaser of the property, but the

evidence shows that the agreement was actually executed by issuing that number of shares of stock to him. The fourteenth prayer was also properly refused for the reasons we have assigned for the admission of the record of the equity proceedings, when considering the eighth exception.

It was not necessary for the appellee to produce in evidence the lease under which Holloway held the quarry property. It is to be presumed that the stockholders of the Marble Company informed themselves, before purchasing, as to the interests in the property held by Holloway as purchaser at the sale of the mortgaged premises, and in this suit it was not incumbent on the appellee to show by proof what those interests were. The fifteenth prayer was therefore rightly rejected. The sixteenth prayer assumes the fact that ten shares of stock were issued to the appellee when that question should have been submitted to the jury. Besides this there was no evidence offered tending to prove that said shares were original stock; the only evidence in regard to said shares being that they were part of the stock issued to Holloway in consideration for his interest in the land transferred to the corporation. With respect to the seventeenth prayer it is only necessary to say that there is no proof that any "other property" than Holloway's interest in the land was received by the stockholders in payment of his subscription to the 440 shares of stock issued to him, and therefore this prayer was properly refused. There was also a motion in arrest of judgment filed in the Superior Court, which was overruled. No point was made in the appellant's brief or argument in this Court, nor does it appear upon what ground it was based, and we can find no valid ground for it in the record. Finding no error in the rulings of the Superior Court in the various exceptions set out in the record, the judgment appealed from will be affirmed.

*Judgment affirmed.*

(Decided 17th July, 1879.)