Jonathan B. H. Smith *vs.* The Silver Valley Mining Company, and others.

*Corporation—Acceptance of Charter—Invalidity of acts done in another State than that by which the Corporation is Created—Corporators and Directors.*

A charter was granted to the S. V. M. Co. by the Legislature of North Carolina, on the 15th of February, 1861, for the purpose of conducting the mining operations therein mentioned. The corporators named in the charter held their first meeting in the City of Baltimore, on the 5th of March, 1861, and on the next day they accepted the charter at a meeting held by them at the same place. No official meeting either of the corporators, stockholders, or directors, was ever held in North Carolina until the spring of 1882. In the year 1879, an assessment was imposed upon the shares of stock of the company, by a resolution of the directors passed at a meeting held in the City of Baltimore; and in the year 1880, a stockholder, whose shares had been forfeited for non-payment of said assessment, filed a bill against the company in the Circuit Court of Baltimore City, to procure his re-instatement in the possession and enjoyment of said shares. Held :

1st. That the mere granting of the charter, it not appearing upon the face of the incorporating Act, or otherwise, that the named corporators had applied for it, did not create a corporate body—there must be at least an acceptance of the grant by a majority of the corporators before its corporate life and existence could begin.

2nd. That this was not a case in which acceptance was to be presumed or inferred from the assumption and exercise of the corporate powers granted, as the proof clearly showed when, where, and how the charter was accepted.

3rd. That although the named corporators were empowered by the charter to manage the affairs of the corporation, and to exercise all such rights as the charter granted, " *as directors*," until others were elected, yet the two capacities of corporators and directors were distinct, and they could not do in the latter those acts which the law required them to do in the former capacity.

4th. That there was nothing in the charter which dispensed with the necessity of its acceptance, and of organization under it, by them as corporators, and certainly nothing which authorized them, even if the grant of such authority would in any case be valid, to do those acts in another State.

5th. That the supposed corporation had no existence at the time the complainant became the holder of what purported to be a certificate of its stock, and his bill should therefore be dismissed.

A charter can be accepted and the corporation organized only within the limits of the State creating it; and this rule should be applied and enforced, when a proper case for its application arises, in the tribunals of the State in which the unauthorized acts were done or the suit was instituted, as well as by the Courts of the incorporating State.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, ROBINSON, IRVING, and RITCHIE, J.

*William S. Bryan, Jr.*, and *William M. Merrick*, for the appellant.

*N. Penniman Bond*, and *Rufus W. Applegarth*, for the appellees.

MILLER, J., delivered the opinion of the Court.

The charter of the "Silver Valley Mining Company" was granted by the Legislature of North Carolina by an Act whi ch was ratified on the 15th of February, 1861.

The title of this statute is "An Act to incorporate the Silver Valley Mining Company, in the County of Davidson." By the first section it is enacted that *five named persons* and "their associates, successors, and assigns, be and they are hereby created and constituted a body politic and corporate, by the name and style of the Silver Valley Min-

ing Company, for the purpose of working, mining, and exploring for silver, gold, copper, iron and all other metals and minerals, and for mining, rending, smelting and working the same, and by that name may sue and be sued." "May have a common seal, and may enjoy all the privileges and powers incident to mining or smelting corporations, and may also purchase, hold and convey any real or personal property or estate as capital stock, to the amount of one million of dollars."

The second section provides "that the said corporation may divide their stock into such number of shares, and may provide for the sale and transfer thereof in such manner and form as said *corporation* shall from time to time deem expedient, and may levy and collect assessments, forfeit and sell delinquent shares, declare and pay dividends on the shares, and may make, alter and repeal such by-laws and regulations as said corporation may deem necessary, not repugnant to the laws of this State and of the United States."

The third section makes it "lawful for the said corporation to be managed by three or five directors, two of whom at least shall be residents of this State, who shall have power to fill vacancies in their own body, shall continue in office until others are elected or appointed, and shall exercise all such rights as by this Act are conferred and granted ; but the stockholders shall have the right to elect said directors annually." By the other sections it is enacted that the aforesaid five named corporators "shall manage the affairs of said corporation *as directors* until others are elected or appointed," that the "corporation shall exist for thirty years, and that this Act shall be in force from and after its ratification."

The appellant by his bill in this case filed in February, 1880, avers that in March, 1869, he became the holder of a certificate which justly and legally entitled him to the ownership of 1800 shares of the capital stock of this cor-

poration, each of greater value than one dollar, and his complaint is that at a meeting of the directors held in Baltimore in February, 1879, a resolution was passed imposing an assessment of two cents a share, and declaring that if this was not paid before the 31st of March following, the stock on which it was not paid should be forfeited to the corporation and sold for its benefit, and that his stock was under this assessment declared forfeited, and the form of a sale thereof had. He charges that the directors had no right to hold a meeting for this purpose out of the State of North Carolina, and that their proceedings in the premises were wholly void ; that he had no notice of the proceedings of this meeting until many months afterwards, though he was and has been for many years a resident of Baltimore, and that the directors and other authorities of the corporation did not wish their said proceedings to be known by him; that no suitable or effective means were taken to give notice thereof even by advertisement in the public papers, the same having been, as he is informed, published in a paper which he does not take and very seldom sees ; that the pretended sale of his stock was made to Wilkins, the president, and Denison, the treasurer of the corporation, and that these pretended proceedings of forfeiture were carried out by their influence, co-operating with other persons who are unknown to him; that shortly after these proceedings came to his knowledge, he made, through his counsel, a formal tender to the president of the amount of the assessment with interest thereon, and demanded to be reinstated in the possession and enjoyment of his stock, but this demand was refused; that all these proceedings purporting to forfeit his stock are merely illusory, have been carried out for the benefit of Wilkins and Denison, officers of the corporation as aforesaid, and that they are not only void in law by reason of holding the meeting beyond the limits of the State which granted the charter, and by reason of the

attempt to deprive him of his property without notice in contravention of the first principles of justice, and of the organic law of the State of North Carolina, as it existed at the time this corporation was chartered, but that they are by reason of the facts above stated, inequitable, unjust and in fraud of his rights.

The bill then prays that the company and Wilkins and Denison may severally answer under oath, and set forth explicitly and fully the proceedings whereof the forfeiture of his stock is alleged to have occurred, and may discover when, by whom, and to whom it was sold and at what price, who is now the holder or ostensible holder thereof, and for whose benefit and interest the same is held, why they did not give greater publicity to their said proceedings, and the names of the persons who combined and co-operated with them in the formation and consummation of the attempt to forfeit his stock, if any such persons there be, and to whose benefit the supposed forfeiture and sale have enured ; that these proceedings of the corporation may be declared to be null and void, that the supposed forfeiture and sale may be annulled, that he may be reinstated in the possession and enjoyment of his said stock, that the said company and Wilkins and Denison may be forever enjoined and prohibited from setting up this supposed forfeiture, and from claiming any benefit therefrom, and that he may have full and fair compensation from them on account of the premises, and for general relief.

All the defendants filed a demurrer to the bill, which was overruled. They then filed separate answers in which they put the complainant upon proof of his ownership of stock, deny all the charges of combination or fraud, set out the proceedings under which the forfeiture and sale were made, and insist that the same were duly and lawfully conducted, and are legal and valid. Proof was then taken, and upon the hearing the Court below passed a

decree dismissing the bill, and from that decree this appeal is taken.

It thus appears that one of the grounds upon which the bill assails the validity of the forfeiture, is that the meeting of the directors at which the proceedings to that end were adopted, was not held within the limits of the sovereignty granting the charter, but another question is presented, and this goes to the corporate existence of this company at the time the appellant became a holder of its stock. The mere grant of a charter like this, where it does not appear upon the face of the incorporating Act, or otherwise, that the named corporators applied for it, does not create the corporate body. Something more must be done. There must be at least an acceptance of the grant by a majority of the corporators, before corporate life and existence can begin. *Angell & Ames on Corp.*, (11 *Ed.*,) sec. 81; *Morawetz on Private Corp.*, secs. 14, 17; *Boone on Corp.*, sec. 23. Nor is this a case in which acceptance is to be presumed or inferred from the assumption and exercise of the corporate powers, for the proof clearly shows, when, where, and how this charter was accepted. The testimony is explicit and without contradiction, that the named corporators held their first meeting in the City of Baltimore on the 5th of March, 1861, less than a month after the passage of the Act, and that on the next day (March 6th, 1861,) they accepted the charter at a meeting held by them at the same place. It also appears that at the same time or shortly thereafter, they elected a president, secretary and treasurer, adopted a seal, determined upon the number and par value of the shares of capital stock, and in fact did every thing pertaining to the organization of the company, at meetings held by them at the same place. In short, the proof is direct and positive, that no official meeting either of the corporators, stockholders or directors was ever held in North Carolina until the spring of 1882, nearly two years

after this bill had been filed. In view of the fact that all these corporate Acts are thus clearly proven to have been done out of the State granting the charter, the question arises as to their validity and the consequent legal existence of this corporation in March, 1869, when the appellant purchased his stock. This question is as directly presented under the averments of the bill and answers in this case, as it ever can be in a civil suit. Legal ownership of the stock which is the foundation of the relief prayed is alleged in the bill, and not admitted by the answers. What then is the law upon this subject?

It seems to be well settled by the weight of authority, that directors may hold meetings, have an office, make contracts, and transact a part at least of the general business of the corporation in another State, unless prohibited by local legislation. But the directors when so acting are not the corporate body, but its mere agents. *Angell & Ames on Corp.*, sec. 104; *Balt. & Ohio R. R. Co., et al. vs. Glenn, et al.*, 28 *Md.*, 287. Nor do we think it makes any difference as to the operation of this rule, that the named corporators, as in this case, are empowered by the charter to manage the affairs of the corporation, and to exercise all such rights as the charter grants, " *as directors* " until others are elected. The two capacities of corporators and directors are distinct, and they cannot do in the latter those acts which the law requires them to do in the former capacity. We find nothing in this charter which dispenses with the necessity of its acceptance, and of organization under it, by them as corporators, and certainly nothing which authorizes them, even if the grant of such authority would in any case be valid, to do these acts in another State. But while the directors may thus act as agents of the corporation it has, ever since the decision of the Supreme Court in the case of the *Bank of Augusta vs. Earle*, 13 *Peters*, 519, been the recognized rule of American law, that a corporation can have no legal existence out of

the boundaries of the sovereignty by which it is enacted ; that it exists by force of the law, and where that ceases to operate the corporation can have no existence ; that it must dwell in the place of its creation and cannot migrate to another sovereignty ; and that it cannot hold meetings, pass notes, or do any corporate acts strictly so-called outside of that sovereignty. *Angell & Ames on Corp.*, sec. 104; *Green's Brice's Ultra Vires*, 442, note a ; *Boone on Corp.*, sec. 66.

The two cases most generally cited in illustration and application of this rule, are *Miller vs. Ewer*, 27 *Maine*, 509, and *Freeman vs. Machias Water Power and Mill Co.*, 38 *Maine*, 343. The former was a writ of entry to recover a tract of land in the State of Maine, and the demandants claimed title through a mortgage thereof executed by the president and secretary of the Bluehill Granite Company, a corporation chartered by that State in 1836. It appeared in proof that shortly after the date of the charter, a meeting of the corporators for organization under it, was called and held in the City of New York, that the charter was there accepted, and the officers of the corporation, president, secretary, and directors were there chosen ; that at a meeting of the directors held in the same city in April, 1837, the president and secretary were authorized by vote to execute the mortgage in question, which they accordingly did, and there was no proof that any meeting for the organization of the company, or for the choice of its officers had ever been held in the State of Maine. The Court upon this proof held that the mortgage passed no title because the directors who ordered its execution were not lawfully chosen, and by a process of reasoning which seems to us entirely sound, reached the conclusion and laid down the proposition " that all votes and proceedings of persons professing to act in the capacity of corporators when assembled without the bounds of the sovereignty granting the charter are wholly void." The Court also in

its opinion delivered by Judge SHEPLEY, reviewed the only two cases, those of *Copp vs. Lamb,* 3 *Fairfield,* 314, and *McCall vs. Byram Manuf. Co.,* 6 *Conn.,* 428, which had seemingly decided the contrary, and showed that in them the question was either not examined or not presented for decision.

In the other case a party sued the corporation for dividends upon his stock, which he alleged had been illegally forfeited. There also it appeared that the Act of incorporation was passed by the Legislature of Maine in March, 1836, and in April following an attempted organization was made in the City of Boston, where the number of shares was determined and the certificate issued ; and the Court following the decision in *Miller vs. Ewer,* held that the stock certificate which the plaintiff offerred as proof of his right being evidenced by officers chosen in Boston, was invalid, because there can be no stock in a non-existent corporation, and that he could not be a stockholder under any attempted organization outside of the State granting the charter.

As we have said these cases have been generally approved as expressing the correct rule of law on this subject, and we have found no subsequent case in which, upon the same or a similar state of facts, a different adjudication has been made. In *Keene and Brady, Trustees, et al. vs. Van Reuth,* 48 *Md.,* 184, no question as to the validity of corporate acts like those in the present case, done or attempted to be done by corporators out of the State granting the charter, arose or was decided. Courts have sometimes differed as to what are corporate acts, and what are acts merely of agents, the majority holding that the directors are merely agents, while some hold their acts as directors to be corporate acts, but the cases are uniform in holding that the charter can be accepted and the corporation organized only within the limits of the State creating it. Nor do we see any good reason why this rule should

not be applied and enforced when a proper case for its application arises, in the tribunals of the State in which the unauthorized acts are done or the suit instituted, as well as by the Courts of the incorporating State. The doctrine that a corporation must exist in the place of its creation and cannot migrate to another sovereignty, is so reasonable and just, and so firmly embedded in our jurisprudence that Courts ought to have no hesitation in enforcing it. But it would be of little practical utility, if corporators under an Act passed by one State can leave it and go to another, and there accept the charter, effect an organization, and thus bring the corporation into existence in a different sovereignty, and there proceed to act under it until restrained by a writ of *quo warranto.* Such acts are mere usurpations of power, mere attempts to exercise authority by persons destitute of it, and should in our judgment, be declared inoperative and void, no matter what the consequences may be, whenever they are, as they have been in this case, clearly proved, and a Court is asked to grant relief to a suitor whose right thereto is founded upon their assumed or supposed validity. There is no rule of comity which requires one State to be made the birth-place of corporations chartered by another.

We are therefore of opinion that upon the facts appearing in this record, this supposed corporation had no existence at the time the appellant became the holder of what purported to be a certificate of its stock, and upon this ground alone we rest the affirmance of the decree dismissing his bill, without considering the other questions which have been argued with much ability by counsel for the appellant.

*Decree affirmed.*

(Decided 24th June, 1885.)