DAVEY *v.* MASSER
MASSER *v.* DAVEY
(Two Appeals in One Record)
[No. 176, October Term, 1953.]

614

*Decided June 22, 1954.*

**616**

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON and HAMMOND, JJ.

*Francis H. Urner* and *D. K. McLaughlin* for the appellant and cross-appellee.

*John Wagaman* and *Hilary W. Gans*, with whom were *Charles Markell* and *Samuel C. Strite* on the brief, for the appellee and cross-appellant.

HENDERSON, J., delivered the opinion of the Court.

This suit was instituted by J. Edward Davey against Harry and Evelyn Masser and Warren Bitner, alleging that Davey is the president and a director of Accelerated Transport-Pony Express, Inc. of Hagerstown, Maryland, and the owner of fifty per cent of its outstanding common stock, being fifty per cent of all the stock entitled to vote, and that Harry Masser is a director and the owner of the other fifty per cent of said stock. Evelyn Masser is alleged to be a director, and Bitner the secretary-treasurer of the corporation. The bill alleged that on July 29, 1950, Davey and Masser entered into a writ-

ten contract, attached to the bill as an exhibit, whereby Masser agreed to transfer all the assets of his business, Masser Motor Express, and the assets of Masser Properties, Inc., to a corporation to be formed, and to sell Davey fifty per cent of the common stock of the new corporation for $500. Davey agreed to give up his employment as an officer of Associated Transport, Inc., with offices in New York, and move to Hagerstown, devoting his entire time to the new corporation. The new corporation was duly formed and took over the Masser business, but not the real estate held by Masser Properties, Inc. An organization meeting was held on July 21, 1951, at which officers and directors were elected. The officers elected were, Masser, chairman of the board, Davey, president, and Bitner, secretary-treasurer. The four directors were Masser and his wife and Davey and his son. The salaries of Masser and Davey were each fixed at $20,000 per year. Bank accounts were opened, subject to withdrawal on the signatures of Davey and Bitner. Davey took over the management of the business. In April 1952, stock certificates were issued in the name of Masser, which certificates remained in the custody of Davey.

The bill further alleged that in December, 1952, Masser and his wife tried, unsuccessfully, to induce Davey to surrender first all, and then part, of his stock interest in the corporation. There were also negotiations for purchase of his interest. On February 19, 1953, there was a purported meeting of the incorporators of the corporation, of which Davey had no notice. At this meeting resolutions were adopted authorizing the issuance of 30,000 shares of common and 1,400 shares of preferred stock to Masser as a "subscriber." There was an election of directors, consisting of Masser, his wife and Bitner. This board undertook to remove Davey as president, and elect Masser in his place. On March 5, 1953, Masser wrote Davey informing him of the action taken, enclosing a check for the balance due him for his services. Davey refused to recognize the validity

of the action, and brought this suit, praying that the purported issuance of stock on February 19, 1953, be declared invalid, and that the previous issue of stock be declared valid; that the purported election of officers and directors on February 19, 1953, be declared invalid, and that the election on July 21, 1951, be declared valid. After a demurrer had been overruled, answer filed, and extended hearings, the Chancellor, on February 15, 1954, passed the decree from which cross-appeals were taken. This decree provided (1) that the contract of July 29, 1950, as amended by mutual agreement, is a valid and subsisting agreement, and that Accelerated Transport-Pony Express, Inc. is the corporation formed pursuant thereto; (2) that the issue of stock authorized at the meeting of July 21, 1951, is void, and that the issue authorized at the meeting of February 19, 1953, is valid, consisting of 1,400 shares of preferred stock of the par value of $50 per share and 30,000 shares of common stock of the par value of $1 per share; that all of said stock shall be issued to Masser, who shall transfer to Davey fifty per cent thereof; (3) that the officers and directors of the corporation elected February 19, 1953, are the lawfully elected officers and directors of the corporation; and (4) that the costs be paid by Harry G. Masser. Davey appealed from paragraph (3) of the decree, and from that portion of paragraph (2) invalidating the stock authorized at the meeting of July 21, 1951, and validating that authorized and issued on February 19, 1953. Masser appealed from paragraph (1) of the decree, and that portion of paragraph (2) requiring Masser to deliver fifty per cent of the outstanding stock to Davey.

A number of questions are raised at the outset as to the correctness of the corporate procedures. It may be noted that the written contract of July 29, 1950, called for the formation of a corporation under Delaware law having an authorized capital stock of 4,000 shares of preferred, $50-par, entitled non-cumulatively to dividends

of $2-, and 1,000 shares of $1-par common. Voting rights were not specifically mentioned, but in a later clause, after providing for the issuance of the 1,000 shares of common to Masser, it was stated that Masser, for $500, would transfer 500 shares of the common, "constituting fifty per cent of the voting stock thereof", to Davey. However, a certificate of incorporation was prepared and filed with the State Tax Commission of Maryland. This authorized the issuance of 30,000 shares of $1-par common and 1,400 shares of $50-par preferred. Nothing in the charter referred to voting rights. Masser, his wife, and Fred A. Puderbaugh were named as incorporators, and authorized to act as directors until the first annual meeting, or until their successors were duly chosen and qualified. The number of directors was fixed at four, with the right in the Board to alter the number, from three to fifteen, in the manner prescribed in the by-laws.

Davey contends that Masser agreed to a modification of the written agreement, so far as incorporation in Maryland, and the amounts of common and preferred stock are concerned. This is not seriously disputed, for Masser signed the charter, and Davey approved it in writing. It is not disputed that a meeting was held on July 21, 1951, at which all of the named incorporators and directors, as well as Davey and his son, were present. Davey made long-hand notes, but they were never written up or recorded in the minute book. This, however, would not be a fatal objection, as between the parties, even though a violation of the corporation law, Code (1951), Art. 23, Sec. 45(a). See *Brune, Maryland Corporation Law and Practice*, § 381. Cf. *Grafflin v. Woodside*, 87 Md. 146 and *Weber v. Fickey*, 52 Md. 500. Davey's notes show that the directors authorized the issuance of 20,000 shares of common stock and 400 shares of preferred, the 20,000 shares to be issued in Masser's name with the understanding that he would transfer 10,000 shares to Davey, in consideration of $500 paid

to Masser on October 25, 1950. The 400 shares of preferred were to be distributed to Miss Winn, Puderbaugh and others, apparently for services rendered to Masser in connection with the contract with Davey or the formation of the corporation. Davey's notes do not show that the directors fixed the value of the property transferred to the corporation as consideration for the stock authorized to be issued, or even described the property to be transferred. No by-laws were adopted. No stock issuance statement was ever filed. Some eight months later, "temporary" stock certificates were issued in Masser's name, as authorized. There were several subsequent meetings of the board of directors elected on July 21, 1951, apparently to deal with current business problems, but no stockholders' meetings were ever held.

When Masser, through his attorney, arranged for the meeting of February 19, 1953, without notice to Davey or his son, he chose to regard all of the previous corporate actions, except the filing of the corporate charter with the State Tax Commission, as void. Some of the steps then taken were in formal compliance with the corporation law. Puderbaugh was present although he claimed to have resigned as a named director. Masser represented himself to be the subscriber to all of the authorized shares of stock, and presented a proposal to transfer certain described property of Masser Motor Express, valued at $100,000, in exchange for said stock. This, of course, ignored the fact that the property had been previously taken over by the new corporation and operated by it for a year and a half. The proposal was accepted, and the meeting then elected a new board, which in turn elected officers and directors, and ousted Davey as president.

It would appear from this recital, that from the convening of the first organization meeting on July 21, 1951, until the meeting of February 19, 1953, the requirements of the corporation law were consistently ignored. Nevertheless, the charter of the corporation

was valid, although it is incomplete in its description of the preferred stock and makes no provision for supplying the omissions by articles supplementary, as permitted by Code (1951), Art. 23, Sec. 14(b). Likewise, the first organization meeting was properly convened and adopted the charter, as filed with the State Tax Commission. See Code (1951), Art. 23, Sec. 127(b). The corporation was in a position to function and did conduct business continuously thereafter. Since we are not confronted with any problems concerning the rights of third parties, we think the solution of the puzzle must be found in recognized equitable principles as between the parties.

We have already referred to the failure to keep minutes as not fatal to the complainant's case. The fact that a meeting was held on July 21, 1951, is not disputed, nor is it seriously denied that the transactions described took place at that meeting, however defective in form. All of the incorporators and directors named in the charter were present and voted in favor of the issuance of stock. The facts that no resolutions were adopted, and no stock issuance statement was prepared or filed, as required by Code (1951), Art. 23, Sec. 16(b) (c) and (e), are not fatal as between the parties. In *Archway Motors, Inc. v. Edelson*, 202 Md. 75, we held that a cross-bill, attacking the validity of outstanding stock issued pursuant to an agreement, was properly dismissed, even assuming that the resolutions authorizing it were inadequate and no stock issuance statement was filed. We said: "In the absence of any intervening rights, it would seem that this agreement is enforceable against the corporation in equity. Cf. *R. & F. Products Corp. v. Rosenthal*, 153 Md. 501, 517, 138 A. 665, and *Larkin v. Maclellan*, 140 Md. 570, 588, 118 A. 181. It would be highly inequitable to invalidate the stock and reissue it to the incorporators." Our affirmance, however, was "without prejudice to the right of any holder of the outstanding certificates of stock to require the corpora-

tion to take whatever legal steps may be necessary to comply strictly with the corporation law in order to effectuate the agreement."

In the instant case we hold that Masser is estopped to challenge the action authorizing the issuance of 20,000 shares of common and 400 shares of preferred stock in his name, upon the conditions stated. Likewise, he cannot contest the issuance, in April, 1952, of the certificates which were signed by Davey and Bitner. The preferred certificates contained a clause limiting their voting rights. On December 31, 1952, Masser, purporting to act as chairman of the Board, filed a sworn statement with the Interstate Commerce Commission, stating that 20,000 shares of voting common stock were outstanding in his name and 400 shares of non-voting preferred stock. We think this amounted to a ratification of the action taken, so far as he was concerned. Cf. *Baker v. Standard Lime & Stone Co.*, 203 Md. 270, 280.

Masser also certified to the Interstate Commerce Commission the list of officers and directors elected on July 21, 1951. The cross-appellants contend that the incorporators and directors named in the charter had no authority to elect directors as their succecssors, but only to serve as such until the annual meeting of stockholders, under Code (1951), Art. 23, Sec. 48(b). The appellant contends that they had the power to fill the vacancy caused by Puderbaugh's resignation and to elect another director to bring the number to four, as authorized by another clause in the charter, under Code (1951), Art. 23, Sec. 50. Assuming, without deciding, that the cross-appellant is correct, we think Masser is estopped to challenge the validity of the action taken, in which he participated and which he subsequently ratified. See *Fletcher, Corporations* (perm. ed.) § 293, and cases cited. Since Masser was bound by the actions taken on July 21, 1951, it follows that his efforts to reissue the stock and oust Davey as president, director and stockholder, were abortive. We think the Chancellor erred

in sustaining the validity of the actions taken at the meeting of February 19, 1953, as between the parties.

Masser could not, in good conscience, repudiate his obligations to Davey after he had received the benefit of Davey's services for a year and a half, during which time the operations of the corporation had been highly successful. Nor could he treat as invalid the stock issued in his name, 10,000 shares of which belonged to Davey as the equitable owner. This was a part of the bargain whereby Davey gave up his lucrative employment in New York and moved to Hagerstown to assume the management of a business that was then operating in the red. Of course, Masser dominated the meeting of February 19, 1953, at which his wife and Bitner were present, and which Puderbaugh attended under protest. We hold that the matters transacted at that meeting cannot stand, and that, in equity, Davey is entitled to one of the certificates for 10,000 shares previously issued in Masser's name. Whether the shares of non-voting preferred previously issued in Masser's name belong, in equity, to the persons for whose benefit they were issued, is a question on which we express no opinion, as these persons are not parties to this suit, and the basis of their claim, if any, is not clearly shown by the record. Our holding, however, is without prejudice to the rights of Masser or Davey, or any person claiming an equitable ownership in the outstanding certificates, to require that proper legal steps be taken to comply with the corporation law, pursuant to the terms of the agreement, as modified and ratified by the appellees at the meeting of July 21, 1951. In any such proceeding the corporation should be made a party. *Rowe Co. v. Rowe,* 154 Md. 599; *Archway Motors v. Edelson, supra; Larkin v. Maclellan, supra.*

The cross-appellants contend that, apart from the defects in the corporate proceedings, the court could not properly require compliance with the agreement, as modified, under the special facts of this case. It is contended

that the agreement was predicated upon assurances by Davey that he would effect a merger of Masser's business with that of Cumberland Motor Express, a competing company. There can be no doubt that this matter was discussed by the parties, and that Davey made repeated efforts to bring this about. But we agree with the Chancellor's statement "in my view this was nothing more than the expression of a hope or expectation of realization and was not a fixed promise on the part of Davey which was a part of the consideration for the contract which was entered into between them on July 29, 1950, almost three months after their first meeting and after they had met with each other on nine previous occasions." The Chancellor also found that Masser Motor Express was in bad financial straits at the time Davey took over the management, that Masser fully understood the contents of the written agreement, and that he accepted Davey's check for $500 on which was written "Consideration—Stock". Davey would not consider coming with Masser as a "partner" or on a "50-50" stock ownership basis until the books of the business were independently audited. Davey had had wide experience in the motor transportation field and at the time held a responsible executive position with one of the largest motor carriers in the country. Relations between the parties were friendly during the next year and a half, and the business prospered. Although Davey was in the sole active management, each of the parties received a salary of $20,000 per year. As stated by the Chancellor, "then, for some not fully explained reasons, one of which might have been the disappointment of Masser that Davey had failed to acquire Cumberland Motor Express, Masser decided to get rid of Davey." On this point the Chancellor also said that even Miss Winn, who was Masser's adviser, "does not say that Davey promised more than that he would do everything in his power to bring about the consolidation of Cumberland Motor Express and Masser Motor Express and from the beginning it was understood

that Davey would put no money or working capital in the business. * * * Far from practicing fraud on Masser, he put his trust in him." The Chancellor found no evidence to support Masser's claim of a confidential relationship, although Masser had a limited education and relied to some extent upon Miss Winn and Bitner. He found that the contract was not wanting in definiteness or mutuality, and that on Davey's part, at least, it had been fully performed. We do not find that the Chancellor, who saw and heard the witnesses, was clearly wrong in his findings of fact.

The cross-appellants argue that the agreement of July 29, 1950, was incapable of specific performance because it involved an agreement to form a corporation, citing the note in 158 A. L. R. 999. But the cases there cited are distinguishable. Here the corporation was properly formed and an organization meeting held. The variations from the agreement, noted above, were accepted by Masser. The agreement was fully performed by Davey, and Masser cannot now complain of the irregularities in the issuance of the stock and the election of officers and directors, to which he was a party.

The cross-appellants make the point that Masser cannot perform his undertaking to transfer the properties of Masser Properties, Inc. to the new corporation, since 200 of the 414 shares belong to his former wife, who was not a party to the agreement. If Masser is unable to perform this undertaking, it would hardly justify his action in seeking to oust Davey, nor would it put Davey out of court in this proceeding. We express no opinion as to what rights Davey might have against Masser for his failure to perform such parts of the agreement as involve transfers from other persons. All that we now decide is that Masser's defenses, based on corporate irregularities, and the alleged failure of Davey to acquire the business of Cumberland Motor Express, are without merit.

We hold that paragraphs (1) and (4) of the decree should be affirmed, and paragraphs (2) and (3) should

be modified to declare that the meeting of February 19, 1953, was ineffectual to remove Davey as president and director, and that Masser be required to transfer one of the certificates for 10,000 shares of the common stock of the corporation to Davey. The decree should be without prejudice to further proceedings to carry out, in proper legal form, the matters dealt with in the meeting of July 21, 1951, including necessary amendments to the charter, adoption of appropriate resolutions and the filing of a stock issuance statement, and the ratification of the election of the officers and directors there attempted, to hold office until their successors are elected and qualified. If the corporation should prove to be deadlocked, through the inability of either side to obtain a majority of the directors or stockholders, remedies are available under the corporation law. Cf. Code (1951), Art. 23, Sec. 48 (e), and *So. Md. Agri. Ass'n. v. Magruder*, 198 Md. 274, 283.

> *Decree affirmed in part and reversed in part and case remanded for the passage of a decree in conformity with this opinion, costs to be paid by Harry G. Masser.*