MARTIN V. B. BOSTETTER, JR. AND GLADYS
VIRGINIA TAYLOR, EXECUTORS OF THE
ESTATE OF MARTIN V. B. BOSTETTER, SR.
*v.* FREESTATE LAND
CORPORATION ET AL.

[Nos. 669 and 670, September Term, 1980.]

*Decided March 5, 1981.*

The cause was argued before THOMPSON, LOWE and COUCH, JJ.

*Kenneth J. Mackley,* with whom were *Mackley & Gilbert* on the brief, for appellants.

*Kent N. Oliver,* with whom were *Donald E. Beachley* and *Richard W. Lauricella* on the brief, for appellees.

COUCH, J., delivered the opinion of the Court.

In 1971 and 1972, Martin V. B. Bostetter, Jr. (Bostetter, Jr.) and Gladys V. Taylor, the appellants and executors of the estate of Martin V. B. Bostetter, Sr. (Bostetter, Sr.), deceased, filed a petition and an amended petition in the Circuit Court for Washington County against the appellees, Freestate Land Corporation (Freestate), Julian L. Oliver, Sr., and Irene R. Burris. By these petitions the court was requested to declare null and void certain acts of the appellees, and to require the appellees to transfer to the appellants certain papers, books, checking accounts, instruments and records. An accounting of monies received and distributed also was sought.

Freestate, Oliver, and Burris filed a bill of complaint in 1976 in the same court, against Bostetter, Jr., Joanne R. Bostetter, wife of Bostetter, Jr., and James C. Rice, individually, against Gladys V. Taylor as executor of the Bostetter estate, and against Bostetter, Jr. as trustee in and executor of the Bostetter estate. This bill of complaint alleged fraud and the commission of a fraudulent conveyance by the appellants and sought injunctive relief, an accounting and damages.

The two actions were consolidated and heard by the court.[1] By an order dated March 10, 1980, the court dismissed the

---

1. The parties offer no explanation for the delay in trying this case.

appellants' petition and granted the relief sought by the appellees. From this action Bostetter, Jr. and Taylor, as executors, and Joanne R. Bostetter, James C. Rice, and Bostetter, Jr., individually, appeal and raise several issues.

In summary the appellants contend that the chancellor erred in determining that the appellees own Freestate and its asset, a farm located in Washington County. We agree with the appellants, and for the reasons set forth in this opinion we find that the appellants own Freestate, and title to the subject farm is properly vested in the appellants as executors.[2]

When lawyers involve themselves in corporate affairs, we hope that they follow the model cited by Chief Judge Gilbert in *Dixon v. Process Corp.,* 38 Md. App. 644, 651, 382 A.2d 893 (1978):

> "The role of the lawyer and his relationship to a business corporation is colorfully stated by Roy A. Redfield in *Factors of Growth in a Law Practice 30* (1962):
>
>> 'When the business corporation is born, the lawyer is the midwife who brings it into existence; while it functions he is its philosopher, guide and friend; in trouble he is its champion, and when the end comes and the last sad rites must be performed, the lawyer becomes the undertaker who disincorporates it and makes final report to the Director of Internal Revenue.' "

The present case disappoints our hopes because the Freestate Land Corporation was deliberately used to create confusion, and the lawyers who should have befriended the corporation neglected it.

The record shows that Bostetter, Sr. practiced law for many years in Washington County. During 1965, as part of his practice, Bostetter, Sr. served as an assignee for the

---

2. In light of this holding, favorable to the appellants, we need not address their questions concerning the application of the Dead Man Statute.

purpose of foreclosing the mortgage on a farm of some 102 acres in Washington County. This farm, containing all or part of tracts known as "Much Grumbling" and "Wolf's Chance," lies adjacent to the Bostetter family tract, referred to as "The Home Place." Desiring to expand his family holdings, Bostetter, Sr. sought to purchase the 102 acre farm.

In the foreclosure action, however, Bostetter, Sr. already represented the mortgagee and the estate of the mortgagor. Apparently attempting to avoid further appearance of conflict, Mr. Bostetter arranged to have the subject farm purchased for him through an agent. Bostetter, Sr. asked his friend and business associate, Julian L. Oliver, Sr., to locate someone who could bid for the farm at its public sale.

When Bostetter, Sr. conducted the public sale on February 16, 1965, the property was seemingly sold to Edward S. Routon of Arlington, Virginia. Routon, the brother-in-law of Julian Oliver, merely served as nominee for Bostetter, Sr.

At or about the time of the farm's purchase, Bostetter, Sr. contacted his son, Bostetter, Jr., a lawyer in Virginia, and asked him to prepare the articles of incorporation for Freestate. Bostetter, Jr. drafted the document. The three incorporators and original directors were James C. Rice, Bostetter, Jr.'s law partner and half-brother; Betty L. Mattos, Rice's legal secretary; and Edward S. Routon. A Bethesda attorney was named as the corporation's resident agent.

On April 12, 1965 the articles of incorporation were signed by the incorporators, notarized, and mailed to the Maryland Department of Assessments and Taxation. This agency approved the articles and issued a charter to Freestate on May 3, 1965.

Several weeks later, Bostetter, Sr. asked Oliver to act as president of Freestate for the purpose of signing a demand note payable to Bostetter, Sr. Oliver signed the $32,715.00 demand note, prepared by Bostetter, Sr. and dated June 21, 1965. Later that day, Bostetter, Sr., as assignee for foreclosure, transferred the 102 acre farm to Freestate. The

consideration recited in the deed was $36,350.00. The deed was recorded among the Washington County land records on July 9, 1965.

Thereafter, Bostetter, Sr. acquired a standard corporate outfit for Freestate, and he assumed control of the corporation's assets. His secretary, Irene Burris, collected the rent paid by the farm's tenants, including rent paid before Bostetter, Sr. deeded the property to Freestate. Rather than open a separate bank account for the rent money, Bostetter, Sr. had the money deposited into his attorney/client trust account. From this account, Burris paid Freestate's bills with checks signed by Bostetter, Sr.

At the direction of Bostetter, Sr., Burris prepared Freestate's annual franchise tax reports for the years 1965, 1966, and 1967. These reports list Oliver as president, treasurer and director, Routon as vice president and director, and Rice as secretary and director. The reports also designate Bethesda as Freestate's principal place of business.

Freestate's Maryland corporation income tax returns for these years, however, list the corporation's principal place of business as Bostetter, Sr.'s office in Hagerstown. These tax returns for 1965 through 1968 were filed in December, 1968 by an accountant who prepared the returns using a summary of Freestate's records drafted by Burris in July, 1968. These records, together with Freestate's corporate books were taken by Bostetter, Sr., sometime in July or August of 1968, and relocated in the nearby office of Oliver.

Bostetter, Sr. also designated Burris as secretary and director of Freestate, and had her prepare a check for $4,641.85 drawn on his attorney/client trust account, and dated July 29, 1968. This check was signed by Bostetter, Sr. and made payable to Freestate. With this check, endorsed by Burris, a bank account was opened for Freestate on August 23, 1968. Only Burris and Oliver were authorized to draw on these funds which apparently represented the net surplus realized by Freestate's rentals.

Bostetter, Sr. died on November 16, 1968 leaving a will which, among other things, gave a monetary bequest to

Bostetter, Jr., made his son an executor of the estate, and appointed him trustee of the remainder of the estate for the benefit of Bostetter, Jr.'s children. Bostetter, Jr. and Taylor, the other executor, opened Bostetter, Sr.'s estate on November 29, 1968. Among the decedent's belongings, the executors found the demand note dated June 24, 1965. They had judgment by confession entered on this note on May 11, 1972, in the amount of $49,072.50. This judgment against Freestate has not been satisfied.

During the management of his father's estate, and in the course of litigation against Freestate, Bostetter, Jr. found no evidence of a valid organizational meeting for the corporation. Believing that in the absence of a valid meeting Burris and Oliver never legally became corporate directors, Bostetter, Jr. requested that the original incorporators and directors hold the requisite meeting.

On July 28, 1972, James Rice met with Betty Mattos McFadden in Alexandria, Virginia. The third incorporator, Edward Routon, had died in 1971. Rice and McFadden signed, and had notarized, a document designated their waiver of notice of the first meeting of incorporators of Freestate. The minutes of this meeting record the incorporators' acceptance of the charter issued to Freestate, and the election of Rice, Bostetter, Jr., and Joanne Bostetter as succeeding directors. The directors authorized the issuance of stock and the purchase of property by the corporation.

Later that same day, Bostetter, Jr. chaired an organizational meeting of the new Board of Directors. Having waived their right to notice of the meeting, the directors adopted corporate by-laws and elected officers. The directors also designated a depository for Freestate's funds, and adopted a corporate seal and stock format. Bostetter, Jr., as president and treasurer of Freestate, received authority to resolve the conflict concerning the 102 acre farm and demand note. By deed dated December 18, 1972, Freestate, by Bostetter, Jr., conveyed the farm to Bostetter, Jr. for the sum of $10.00 and other valuable consideration.[3] This deed was recorded

---

3. Bostetter, Jr. testified that he holds the farm as executor of his father's estate and as trustee for his father's heirs, declaring the farm's income on fiduciary returns.

among the land records of Washington County on January 4, 1973.

The above-stated facts precipitated the equity actions which were consolidated and heard in February of 1980. The chancellor characterized the circumstances surrounding Freestate as "strange," "unorthodox," and "highly irregular if not even more suspect." We agree with this description of the factual background. Nevertheless, we find that the chancellor clearly erred in concluding from the facts that (1) Freestate was properly organized prior to July 28, 1972, that (2) Bostetter, Sr. divested himself of any interest in Freestate, and that (3) Oliver and Burris obtained ownership of Freestate.

## I. Organization of Freestate

In his memorandum opinion of March 10, 1980, the chancellor found that Bostetter, Sr. "assumed complete control of Freestate" following the June 21, 1965 meeting of Bostetter, Sr. and Oliver. Responding to appellants' contention that Bostetter, Sr. and Oliver never validly organized Freestate, appellees claim that the activity of June 21, 1965 constituted Freestate's organizational meeting. Conceding that "Bostetter, Sr. was lax or negligent in properly conducting and documenting the affairs of Freestate," the appellees contend that such negligent conduct effectively prepared Freestate for the operation of its business. Neither the chancellor's memorandum, nor the appellees' brief cites authority for this contention.

The appellees, however, refer us to Maryland case law and the applicable provisions of the Maryland Code. By virtue of Md. Ann. Code Art. 23, § 131 (b) (1957) [4] in effect in 1965, Freestate became a body corporate when its articles of incorporation were accepted by the Department of Assessments and Taxation on May 3, 1965. Thus we find no challenge to Freestate's existence per se; the questions concern who can run the corporation.

---

4. This provision now appears at Md. Ann. Code, Corp. & Ass'ns § 2-102 (b) (1) (1975).

The legislature has provided the rules by which corporations are to be organized and operated. Md. Ann. Code Art. 23, § 4 (1957) requires the filing of articles of incorporation which identify the incorporators and state the number of directors, which shall not be less than three. Moreover, the articles must identify those persons who shall act as directors until the first annual meeting or until their successors are duly chosen and qualify. Subsection (b) (7).

Freestate's articles of incorporation satisfy this statutory requirement by stating:

"The number of directors of the corporation shall be three (3), which number may be increased or decreased pursuant to the By-laws of the Corporation, but shall never be less than three (3); and the names of the directors who shall sit until the first annual meeting, or until their successors are duly chosen and qualified, are James C. Rice, Edward S. Routon, and Betty L. Mattos."

Section 52 provides that the business and affairs of the corporation shall be managed by a board of directors which, until the first annual meeting of stockholders or until successors are duly elected and qualify, shall consist of the persons named as such in the charter. Section 55 provides:

"After the acceptance for record of this articles of incorporation, an organization meeting of the board of directors named in the charter shall be held, at the call of a majority thereof, for the purpose of adopting bylaws, electing officers and for the transaction of such other business as may come before the meeting. The directors calling the meeting shall give not less than three days' notice thereof in writing to each director. Such notice shall state the time and place of the meeting." [5]

---

5. With minor stylistic changes, this language now appears at Md. Ann. Code, Corp. & Ass'ns § 2-109 (a) (1975), a provision which has not been the subject of any previous decision.

In case of a failure to hold an election of new directors, the authority of the directors holding over continues until their successors are duly chosen and qualify. Section 57.

These statutory provisions grant to the original directors alone the authority to call the required organizational meeting. Additionally, the statutes impose on these directors the responsibility to give proper notice of the meeting. No Maryland decision holds that a corporation may conduct lawful business when the requirements have been totally ignored, absent effective waivers by the parties. Rather, the complete organization of a Maryland corporation requires a meeting of the directors named as such in the charter, who exercise the powers of the corporation to issue stock and thus create the stockholders. H. Brune, *Maryland Corporation Law and Practice* § 151 (Rev. ed. 1953).

A properly convened first organizational meeting of the directors named in the charter, where the charter may be accepted, is necessary to endow the corporation with the capacity to transact the legitimate business for which it was created. *Davey v. Masser,* 204 Md. 612, 621, 106 A.2d 92 (1954); *see Smith v. Silver Valley Mining Co.,* 64 Md. 85, 90-91, 20 A. 1032 (1885), in which the Court of Appeals refused to dispense with the required organization of a corporation, by its incorporators, under its charter.

We see no reason to abandon the statutory requirements, and in examining the record we find no evidence that Bostetter, Sr. and Oliver complied with those requirements. The directors named in the charter did not receive notice or waive their right to notice, of any meeting prior to 1972. Absent such notice or waiver, the actions taken by Bostetter, Sr. and Oliver must be held void, as lacking corporate authority. *Roland Park Shopping Center v. Hendler,* 206 Md. 10, 24, 109 A.2d 753 (1954); *Stevens v. Emergency Hospital,* 142 Md. 526, 121 A. 475 (1923).

The charter of Freestate conferred corporate authority upon Rice, Routon, and Mattos, and that authority could not be transferred until Freestate was completely organized. *Taggart v. Western Md. R.R. Co.,* 24 Md. 563, 594 (1866).

Thus, even if Bostetter, Sr. and Oliver assumed the titles of corporate directors, their lack of authority precluded them from acting alone to bind Freestate. Their transactions in the name of Freestate were nullities. *Jackson v. County Trust Co.*, 176 Md. 505, 509, 6 A.2d 380 (1939); *see also Miller v. Berman*, 95 S.E.2d 319 (Ga. App. 1956), in which a Georgia appellate court held that the purported president of a chartered corporation could not validly contract because of the failure to organize, create stock, and elect officers.

Contrasting against Bostetter, Sr.'s failure to organize Freestate, and Oliver's invalid attempt to act as corporate president, the incorporators' meeting on July 28, 1972 effectively organized Freestate.

Formal organization of a corporation can be completed at the incorporators' meeting. H. Oleck, *Modern Corporation Law* § 521 (1958). This meeting usually occurs within a "scintilla of time after filing" of the articles of incorporation. Shapiro, "Statutory Incorporation Flexibility in Maryland," 6 U. Balt. L. Rev. 1, 4 (1976). The corporation statutes do not indicate that a delay between the issuance of the charter and the organizational meeting affects the validity of that meeting. The case law as well permits reasonable delays between the time a corporation has been created and when it begins business under its charter. *Bonaparte v. Lake Roland R.R. Co.*, 75 Md. 340, 348, 23 A. 784 (1892). Thus, the incorporators retained control of Freestate until the meeting of 1972 at which the new board of directors was lawfully elected.

## II. Bostetter, Sr.'s Interest in Freestate

At the hearing on February 26, 1980, Oliver testified that he obtained custody of Freestate's records in July or August of 1968. He stated that Bostetter, Sr. brought the documents, in a cardboard box, into Oliver's office. Oliver also said that he had no further contact with Bostetter, Sr. concerning Freestate, and that Freestate was subsequently operated by Oliver and Burris. Trying to explain this casual transfer of the corporate documents, Oliver and Burris stated in their

pleadings that Bostetter, Sr. wished to divest himself of all ownership of Freestate during an investigation by the Internal Revenue Service. No evidence was presented concerning such an investigation.

Thus, the hearing transcripts shed little light upon Bostetter, Sr.'s motives for the relocation of Freestate's records. We agree with the chancellor's statement that,

"One might speculate as to his reasons for doing so, but whatever they were, they died with him."

We disagree, however, with the lower court's conclusion that the change in location of the records signified a change in the corporation's ownership. Nothing so important as the transfer of corporate ownership can be inferred from the evidence presented at the hearings. *See Schilling v. Waller,* 243 Md. 271, 276-279, 220 A.2d 580 (1966), in which the Court of Appeals held that evidence of a decedent's previous inter vivos gift must be clear and unmistakable.

Moreover, Bostetter, Sr. acting alone may have lacked the legal authority to dispose of Freestate, absent consent of the incorporators and directors. *Jackson v. County Trust Co., supra. See Gontrum v. Union Liberty Life Ins. Co.,* 177 Md. 624, 632, 633, 11 A.2d 625 (1940), in which the Court of Appeals discussed the legislature's control over the transfer of corporate franchises.

Therefore we find that Bostetter, Sr. retained ownership of Freestate's assets and records.

### III. Ownership of Freestate

Having found that Bostetter, Sr. retained an interest in Freestate during his life, we also find that his interest became a part of the Bostetter, Sr. estate. Neither the $500.00 contributions made by Oliver and Burris to Freestate in 1969, nor their subsequent withdrawals of $2,500.00 each, affected the interest of the Bostetter, Sr. estate. Likewise their claim of a "continuous thread of involvement" with Freestate is not an indicia of legal

ownership. *See Mabry Corp. v. Dobry,* 141 So. 2d 335 (Fla. App. 1962), cited in Annotation, 8 ALR3d 1122, 1137, in which an equity court redistributed land improperly claimed by an unorganized realty corporation.

Our conclusion does not require a court order for the transfer of Freestate's records from Oliver and Burris to Bostetter, Sr.'s executors. Rather, the proper recipients of these records are the directors of Freestate. The lower court should frame an appropriate order to place complete control of Freestate, and its records, in the hands of the duly authorized board of directors as determined at the 1972 organizational meeting.

> *Order reversed; case remanded for entry of appropriate'order consistent with the views expressed herein.*
> *Costs to be paid by appellees.*