## ROLAND PARK SHOPPING CENTER, INC. ET AL. *v.* HENDLER

[No. 39, October Term, 1954.]

12

*Decided December 15, 1954.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Edward H. Burke* and *McKenny W. Egerton,* with whom were *Bowie, Burke & Leonard* and *Piper & Marbury* on the brief, for the appellants.

*Eugene M. Fienblatt,* with whom were *David P. Gordon, Nolan P. Chipman* and *Gordon & Fienblatt* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

The primary question to be determined in this case is the meaning and effect of the provision in the 1951 revision of the corporation law that certain limitations and restrictions, permissible in the by-laws under the prior law, be transferred to the charter within three years from June 1, 1951, if they are to continue to be effective.

In 1945, three business men, Smith, Hendler—the appellee, and Chertkof—an appellant, associated themselves in order to buy and operate jointly a shopping center in Baltimore. Chosen as the vehicle for the venture was a close corporation, in substance an incorporated partnership. Two-thirds of the purchase price was to be borrowed on a mortgage by the corporation and the other third was to be loaned to it by the three, in the proportion of their ownership, which was to be two-fifths, two-fifths, and one-fifth. To protect each against the combined voting power of the other two, it was agreed that a quorum of the stockholders would be eighty-five per cent of the outstanding stock, and that concurrence of the same percentage of the stock would be necessary to pass any motion or resolution, or to elect or remove a director, or to take any other action at any meeting of stockholders, or to amend or repeal the by-laws. It was agreed also that the number of directors would be three, all being required to constitute a quorum, as well as that the affirmative vote of all three would be

necessary to pass any motion or resolution or to take any action at any meeting of the board of directors.

The charter, by-laws and minutes of the first meeting of the incorporators were drawn by a lawyer employed by Chertkof. At the meeting, by-laws precisely in the form agreed on, were adopted and ordered inserted in the minutes. The three entrepreneurs were then elected directors to succeed the incorporators, who were employees of Chertkof, and next, Smith and Hendler each subscribed to four shares of stock and Chertkof to two shares, at a price of ten dollars a share.

The corporation has since operated the shopping center, and has prospered mightily. Smith died in 1948 and Chertkof acquired his interest, so that he owned sixty per cent of the outstanding stock and Hendler forty per cent. Chertkof's wife succeeded Smith as a director, and Chertkof replaced him as president, Hendler becoming vice president and treasurer, and Hendler's niece, Naomi Levin, secretary. Resolutions were passed requiring the joint signatures of Chertkof and Hendler for the withdrawing of funds from banks. As time went on, Chertkof arrogated to himself more and more of the management of the corporation without consulting Hendler. This led to friction between them, and finally, in 1952, Chertkof decided that he must do away with the by-law provisions as to the eighty-five per cent votes and the unanimous action of the three directors, which, until then, had always been given scrupulous respect. He sought legal advice and was told that under the 1951 revision of the corporation law, a majority of the stock could act until such time as the by-laws requiring a greater proportion of stock for action, were put in the charter. At the annual meeting of stockholders held on March 13, 1952, Chertkof followed the advice of his counsel and voted his six of the outstanding ten shares, to elect a board of three directors, which did not include Hendler and did include Chertkof's son and John McC. Mowbray, each an appellant. He voted also to delete

from the by-laws each of the provisions requiring the vote of eighty-five per cent of the stock and the requirement of concurrence of all three directors in actions of the board of directors. Hendler, who was at the meeting, protested vigorously that the actions were all contrary to the original agreement and the by-laws, and were illegal and void.

The newly elected board then elected as officers, Chertkof, president, his son, vice president and secretary, and Hendler, treasurer. Chertkof and his son were authorized to sign the checks of the corporation jointly, Hendler being given no power in this regard. The effect of the actions of the stockholders and directors was to vest complete control of the corporation in Chertkof and his nominees.

Hendler filed a bill of complaint against the corporation, Chertkof, the two newly elected directors and a trust company in which were deposited the corporate funds. He set forth all that has been recited, as well as additional facts concerning the operation of the corporation by Chertkof and the handling of the corporate funds, and prayed that the amendments to the by-laws "purportedly adopted at a meeting of the stockholders of Roland Park Shopping Center, Inc. held on March 13, 1952 be declared void and of no effect unless and until adopted by the vote of 85% of the issued and outstanding stock of said corporation"; that the purported election of Jack O. Chertkof and John McC. Mowbray as directors be declared void; that the meeting of the directors be declared illegal, void and of no effect; that the depository of the corporation be restrained from honoring checks of the corporation unless signed by David W. Chertkof and Bernard R. Hendler; that the directors elected on March 13, 1952 be ordered to account to the corporation for all corporate funds drawn from the depository on the joint signatures of David and Jack Chertkof; and, finally, that David W. Chertkof, Bernard R. Hendler, and Annie Chertkof be declared to be the present directors of the corporation. Demurrers

were over-ruled and after the filing of answers and the taking of testimony, the Chancellor granted relief substantially as prayed.

The appellants place their reliance on three points: first, that under Code (1951) Art. 23, Sec. 11(f), as enacted by Chapter 135 of the Acts of 1951, a by-law requiring concurrence of a greater proportion of the stock than that required by the corporation article, for corporate action or the presence of a quorum, is inoperative, is in a state of suspended animation, until the time, within three years from June 1, 1951, that its provisions are transferred to the charter. From this follows, they say, that until this is done, the normal provisions of the corporation article apply and a majority vote is enough to amend by-laws, elect directors or take other corporate action; second, that the by-laws, as originally agreed to, drawn and worked under for seven years, were always contrary to law and void because unreasonable; and third, that equity had no jurisdiction of the matters alleged and the relief sought in the bill of complaint.

We find no substance in any of the contentions.

Sec. 11(f) reads as follows: "At any time within three years after June 1, 1951, the board of directors of any corporation of this State may, and upon request of any stockholder shall, file with the Commission articles of amendment setting forth any by-laws of the corporation in effect on May 31, 1951, providing (1) for cumulative voting, (2) that any action may be taken or authorized upon the concurrence of a proportion of votes of all classes or of any class of stock other than that required by this Article for such action, or (3) that the presence of stockholders entitled to cast a proportion other than a majority of votes thereat shall constitute a quorum at any stockholders meeting. Upon the acceptance of such articles of amendment for record by the Commission, the by-law or by-laws set forth therein shall constitute a part of the charter of such corporation, and may at any time thereafter be amended or re-

pealed in the manner provided in any by-law of such corporation in effect on May 31, 1951, if such by-law is set forth in said articles of amendment, or, in the absence of such by-law in the articles, by majority vote of the stockholders."

Code (1951) Art. 23, Sec. 1, which was Sec. 1 of Chapter 135 of the Acts of 1951, explains in paragraph (b): "Nothing in this Article shall be taken or construed * * * as affecting or impairing the validity of any corporate act done or performed within three years after June 1, 1951, if done or performed pursuant to charter or by-law provisions legally made prior to said date."

The inference which arises from the mere reading of Section 11(f), with such fortification as is given by Section 1 that by-laws continue to be in force and effective for a period of three years from June 1, 1951, is challenged directly by the appellants. They argue that the express and explicit statement of Code (1951) Art. 23, Sec. 38, that a majority of the votes cast by the stockholders shall be sufficient to take or authorize action upon any matter "unless more than a majority of votes cast is required by this Article or by the charter", renders nugatory and without effect any such by-law provision after June 1, 1951 unless and until it is transferred to the charter. As we think they must, the appellants concede, albeit reluctantly, that if such by-law provisions are transferred to the charter within three years from June 1, 1951 they are effective and binding. Their argument leads them to the anomalous position that the stage is set for a race of diligence. If the controlling interest of the corporation can manage to take corporate action by majority vote when the by-laws require more, before some stockholder forces the insertion of the by-law provisions in the charter, then such action will be valid, although as soon as the provision is in the charter, it will again be effective as to all future actions. Even if the language of the statute seemed to us ambiguous, we would be reluctant to adopt a construction leading

to such a strange result. We find, however, that the language is unambiguous and clear, and that provisions in by-laws requiring a greater proportion of the votes cast than a majority, if valid under the law as it stood prior to 1951, continue to be valid and effective for a period of three years from June 1, 1951, if not transferred to the charter within that time, and would continue to be valid and effective after the time they are transferred to the charter.

The instances in Maryland in which there is actual evidence of legislative intent are rare. This is one of the instances and here there is abundant evidence. The revision of the corporation Article was prepared for and recommended to the General Assembly of 1951 by a commission of experienced lawyers appointed by the Governor pursuant to a resolution of the Legislature. The report of this commission and the explanatory notes of its reporter were submitted with a proposed bill to the Legislative Council, which forwarded to the Legislature the bill, the report of the commission and the notes, and recommended passage of the bill. See *Report of the Commission to the General Assembly of 1951 of the Maryland Legislative Council,* Vol. 1, p. V following p. 150. The final report of the commission said: "A new sub-section (f) has been added to Section 11. Certain important provisions, which under present law may be included in the by-laws, are required by the revision to be included in the charter. Any such provisions now included in by-laws *will become* unenforceable, if not transferred to the charter by charter amendment within three years after the effective date of the Act. Because it was felt that there may be cases in which rights of minority interests now protected by by-law provisions might be lost by inability to obtain the necessary vote for a charter amendment, sub-section (f) was added to provide for transfer of such provisions to the charter without need for stockholders vote." (Emphasis supplied) The reporter's notes begin at page 71 of the Report of the Legislative Council. There, in discussing

Section 1 of the bill, now Section 1 of Article 23 of the Code headed "Applicability", he points out that the new law applies to all corporations existing at its effective date or thereafter formed, and adds: "In most cases this will affect merely procedures for future action. In a few cases, special by-law provisions will have to be transferred to the charter, if they are to be *continued* in effect; however, a period of three years is allowed such corporations to make the necessary amendments and also a simplified procedure is provided, if desired, under Section 11." (Emphasis supplied) The reporter had this to say as to sub-section (f) of Sec. 11 (p. 74): "Sub-section (f) is new. Under the proposed Act the three provisions referred to in this sub-section must be included in the charter not later than June 1, 1954, if they are now in the by-laws and it is desired *to keep them in effect*. Important contractual rights between stockholders, particularly in closely held corporations, may be dependent on *continuance* of these provisions, yet in some cases it may be virtually impossible to obtain the necessary two-thirds vote for a charter amendment. Sub-section (f) is included to cure this difficulty." (Emphasis supplied)

The report of the commission and the reporter's notes, which were before the Legislature when it passed the bill in the form suggested, not only were consistent with the language of the law as passed, but give almost conclusive evidence that the Legislature intended the law to mean what it apparently means, and that the intent and meaning were that valid by-laws continued in effect, at least until June 1, 1954, even if no action was taken sooner to perpetuate them in the charter.

The argument of the appellants as to the invalidity of the by-laws under the law, as it stood when they were adopted, is that they were unreasonable because, in operation, they required unanimity of action, both as to the actions of stockholders and directors. The contention as to unanimity is true but this is not to say that where the Legislature has expressly authorized

a requirement which obviously can lead to this result in many cases, that it is unreasonable and invalid. The courts have shown an increasing tendency to hold such requirements valid even where there is no express statutory authority for the provision but merely no conflict with the statute. Where the statutes clearly say there may be required a vote greater than a majority (which may go up to unanimity), there is no real doubt that such a requirement is valid. See *Judicial Tolerance of the Incorporated Partnership,* Law and Contemporary Problems, Autumn, 1953, 435, at 443, 445; and *Stockholders Agreements in the Closely Held Corporations,* 59 Yale Law Journal 1040, 1045-6, where the author points out that there is nothing revolutionary in the idea that there can be an agreement requiring unanimous action, for, until recently, unanimous consent was required in many States for changes in the charter or for other organic changes or for the sale or mortgage of substantial assets. The potential tyranny of a minority, having a veto power, is no worse than the possible autocracy of a majority, particularly where, in either case, the parties go in with eyes open. See also *Lutz v. Webster* (Pa.), 94 A. 834; *Boornazian v. Sarkisian,* 110 N. Y. S. 2d 350; *Jos. H. Carter, Inc. v. Carter,* 127 N. Y. S. 2d 518.

Under the law in effect when the corporation was formed, every corporation had the power under Code, (1939) Art. 23, Sec. 8 (8): "To make by-laws not inconsistent with law or with its charter for regulating the government of the corporation and for the administration of its affairs." Art. 23, Sec. 4, then provided that provisions in the charter or by-laws of corporations of this State: "* * * requiring for any purpose the vote of the holders of a proportion of the shares of one or more classes of stock greater than the proportion thereof required by any provision of this Article for such purpose are hereby declared legal and binding." Art. 23, Sec. 9, then, in effect, provided that: "A majority of the board shall constitute a quorum for the transaction of business, unless the by-laws otherwise provide * * *." *Brune,* in

*Maryland Corporation Law,* 1933 Ed., Sec. 68, states that: "The by-laws may provide exceptions to the rule that a majority of the votes cast shall be sufficient to elect or pass any measure; and may require for any purpose a proportionate vote greater than that required by statute for such purpose."

It is to be noted that the commission which recommended the passage of the 1951 revisions of the corporation laws, suggested and the Legislature provided in Sec. 38 of the new law that the concurrence of a greater proportion of the stock than provided by the corporation Article, generally, could be had if the restriction were inserted in the charter. The reporter's notes in the Report of the Legislative Council says, as to this section (at p. 80) : "* * * the only substantive change which has been made is that any provision authorizing action to be taken by a corporation with a greater or a smaller portion of votes than required by the statute must be contained in the charter, whereas under present law such a provision may be included either in the charter or in the by-laws." In Sec. 52 (c), there was repeated in the new law the provision of the old law that a majority of the directors shall constitute a quorum unless the by-laws otherwise provide. A new section (d) was added: "The action of a majority of the directors present at a meeting at which a quorum is present shall be the action of the board of directors unless the concurrence of a greater proportion is required for such action by this Article, the charter or *the by-laws.*" (Emphasis supplied) The reporter's notes say, as to Sec. 52, that the provisions of sub-section (c) are substantially the same as the prior law and that sub-section (d) is new, adding: "While this provision conforms to existing practice, no such statement is *specifically* included in existing law." (Emphasis supplied)

The language used by the Legislature, both in the old law and the new, clearly is broad enough to permit the percentage of stock necessary for action to be one hundred. There is nothing in the statutes to show that it

did not mean what it said. On what basis then and by what means is a court to draw a line the Legislature did not draw and say any given requirement for concurrence of stock is so unreasonable as to be invalid. Under both the old and the new law, the vote of two-thirds of outstanding stock ordinarily is required to amend the charter or to merge or consolidate or sell substantial assets. The appellee who holds forty per cent of the stock in the shopping center corporation could prevent action in any of these respects, yet no one suggests that this would have made these provisions invalid, as unreasonable in the present case, if the by-laws did not establish a greater vote.

There is no indication that the Legislature intended any limit as to how much of the outstanding stock could be required for corporate action. They provided that less than the usual required vote would be permissible if the charter so stated but they put a floor under the permission—not less than a majority. When they repeated in the new law the provision of the old that there could be required a greater vote than the law generally provided, they did not place any ceiling over the privilege, nor even hint at any doubt of validity.

It is worthy of note, too, as bearing on the question of reasonableness, that the provisions of the Maryland law are not rare. They are found in the laws of many States, including New York and Delaware. They have been upheld in Delaware. *Sellers v. Joseph Bancroft & Sons Co.*, 17 A. 2d 831. In New York, a corporation revision commission urged and the 1951 Legislature gave permission to adopt a rule of greater than usual concurrence, without ceiling, of stock entitled to vote. Section 9, New York Stock Corporation Law. The requirement of unanimous action of stockholders and directors has received judicial blessing in New York. *Boornazian v. Sarkisian*, 110 N. Y. S. 2d 350, and *Jos. H. Carter, Inc. v. Carter*, 127 N. Y. S. 2d 518, both *supra*. Cf. *Benintendi v. Kenton Hotel*, 294 N. Y. 112, 60 N. E. 2d 829; and *Clark v. Dodge*, 269 N. Y. 410, 199 N. E. 641. We find

no merit in appellant's contention that the by-laws were invalid under the law in force at the time of their adoption.

Appellants, in arguing that equity had no jurisdiction in the matter, rely on the line of cases which hold that equity will not try title to office, including corporate office. We think that these cases do not control. The question here on which the case turned and which had to be answered, was the validity of the amendment to the by-laws, which in turn controlled action taken under the new by-laws. This Court has affirmed assumption of jurisdiction by courts of equity in similar cases. In *Stevens v. Emergency Hospital,* 142 Md. 526, the by-laws provided that they could be amended at an annual meeting or at a meeting especially called for that purpose, provided thirty days public notice by advertisement be given of the proposed amendment and the time and place of the meeting. The thirty days notice was not properly given and the amendment was held void. See also *Levin v. Sinai Hospital,* 186 Md. 174, 180; *Baker v. Standard Lime and Stone,* 203 Md. 270; *Webb v. Ridgely,* 38 Md. 364; *Supreme Lodge v. Simering,* 88 Md. 276; *Minch v. Minch & Eisenbrey & Co.,* 139 Md. 426; *Lutz v. Webster* (Pa.), 94 A. 834, *supra;* and cf. *Archway Motors, Inc. v. Edelson,* 202 Md. 75; *Davey v. Masser,* 204 Md. 612.

It is suggested that appellee would have had a complete remedy at law if, after the meeting of March 13, 1952, he had requested the new board of directors to transfer the by-law provisions requiring the vote of eighty-five per cent of the outstanding stock to the charter, and had brought an action of *mandamus* to establish his right to continue as a director. Passing the question as to how the new board of directors could have transferred to the charter by-laws which had been rendered non-existent by amendment, the appellee, had he regained the office of director, would have still lacked the right, vital to him and granted by the original agreement and the by-laws, prior to amendment, viz—that a quorum of the directors be three and that their action be unanimous.

The Act of 1951 did not require restrictions, pertaining to directors, to be in the charter, but permitted them in the by-laws. It is clear that whatever other judicial remedies the appellee could have pursued, he required the intervention of a court of equity to restore to the by-laws the quorum and voting restrictions as to directors, of which he was wrongly deprived at the meeting of March 13, 1952.

We think the court below had jurisdiction and that its action in granting relief, substantially as prayed, was correct.

*Decree affirmed, with costs.*